|     |                                    |                              |
| --- | ---------------------------------- | ---------------------------- |
| 1   | **UNITED STATES DISTRICT COURT**   |                              |
| 2   | **DISTRICT OF NEVADA**             |                              |
| 3   |                                    |                              |
| 4   | * * *                              |                              |
| 5   | UNITED STATES OF AMERICA,          | Case No.: 2:16-cr-00140-RFB  |
| 6   | Plaintiff,                         | **ORDER**                    |
| 7   | v.                                 |                              |
| 8   | CHANDAN MANANSINGH,                |                              |
| 9   | Defendant.                         |                              |

## I. INTRODUCTION

Defendant Chandan Manansingh filed a Motion to Suppress on November 4, 2016 regarding a search that was conducted at his residence on April 1, 2016. (ECF No. 36). Manansingh seeks to suppress all evidence obtained from the search because there was no reasonable suspicion to support the search. The Court held evidentiary hearings in March of 2017. On May 26, 2017 the Court issued its oral ruling granting the Motion to Suppress and indicating that it would issue a written order. This written order follows granting Manansingh's Motion to Suppress. (ECF No. 36).

## II. BACKGROUND

The Court makes the following findings of fact and holdings.

### A. Procedural Background

On November 26, 2013 Manansingh was sentenced in the District of Maryland for his conviction for Introduction of Misbranded Drugs into Interstate Commerce with Intent to Defraud or Mislead. He

received 36 months of probation. The supervision for Manansingh's probation was transferred to this District on March 18, 2015.

On December 4, 2015, judgment (the "December 4 Judgment") was entered against Manansingh for violating the conditions of his probation and sentencing him to 77 days of custody. The December 4 Judgment included a supervised release condition which prohibited Manansingh from using legal or illegal steroids that are associated with increasing physical strength. On January 6, 2016, judgment (the "January 6 Judgement") was again entered against Manansingh for violating the conditions of his supervised release and he was sentenced to time served with twelve months of supervised release. The January 6 Judgment included, inter alia, a condition of supervised release authorizing a warrantless search of Manansingh's residence based upon "reasonable suspicion of contraband or evidence of a violation of a condition of supervision." The January 6 Judgment also include a no steroid condition. The conditions for these two judgments are incorporated by reference into this Order.

Manansingh has never contended that he was unaware of all of his conditions of supervised release for the December 4 Judgment and the January 6 Judgment. The Court finds that he was fully aware of all of the conditions of supervised release for these two judgments.

**B. Factual Findings**

The Court held an evidentiary hearing on March 15, 2017. The Court heard the testimony of Probation Officer Shawn Mummey and received documentary evidence. Based upon this hearing and the Court's credibility determinations as to the witness's testimony and the exhibits admitted, the Court makes the following findings of fact.

Probation officers conducted a search of Manansingh's apartment on April 1, 2016. During this search officers discovered two handgun magazines containing ammunition (bullets) in a bedroom in the apartment.

On December 9, 2015, Manansingh informed his probation officer Shawn Mummey that he owned an old Mercedes (the "Mercedes") that he used for transportation. On December 10, 2015, Mummey saw Manansingh at his counseling appointment and saw that he was driving a black BMW (the "BMW"). Manansingh told Mummey that the BMW belonged to Manansingh's fiancé, Ms. Angela Nairns. Manansingh told Mummey that his Mercedes was not working so he needed to drive the BMW. He told Mummey that he did not expect to be driving the BMW regularly in the future. Subsequent to this conversation but before the search in this case, Mummey checked the BMW's registration with the Nevada Department of Motor Vehicles and confirmed that it belonged to Nairns. Mummey never received or had any information to suggest that Manansingh could not drive the BMW. Mummey also understood before the search in this case that Manansingh might need to drive the BMW when Manansingh's vehicle was not working. Mummey also knew before the search the identifying information for both vehicles. The Probation Office never received any information that Manansingh regularly or infrequently drove any other vehicles besides the Mercedes and the BMW. Manansingh was truthful with Mummey about the vehicles he was driving and did not mislead or lie to Mummey about what vehicles he drove or the circumstances regarding when he would be driving them. Mummey saw Manansingh driving the BMW to another counseling appointment on March 29, 2016. The Court does not find that, prior to the search, Mummey or the Probation Office were aware of Manansingh's possible failure to note the Mercedes and BMW on his online monthly reports in early 2016. The Court does not even find that such a failure actually occurred. Moreover, Mummey was clearly aware of the cars that Manansingh drove, and Manansingh provided him truthful information about these vehicles as directed.

Manansingh informed Mummey around June of 2015 that Manansingh had obtained employment as a courier. Manansingh was also seeking to be reinstated as an attorney because his license had been suspended upon his federal conviction. Between June 2015 and the date of the search, Manansingh provided, as requested and required, documentation of his employment as a courier. Manansingh received

approximately $500 per month in net income. The Probation Office did not have any information during this period that Manansingh had any other sources of income or assets. Mummey confirmed that Manansingh's residence in an upscale apartment/condominium complex was actually the apartment of his fiancé, Nairns. Mummey confirmed with the management of the complex before the search in this case that Nairns was listed on the lease and that Manansingh was listed as a permanent guest for the apartment. The Probation Office never received any information that Manansingh was required to pay or did pay any money for staying in the apartment or had outstanding payments for the Mercedes.

In January 2016, Mummey became concerned that Manansingh might be using steroids in violation of his conditions of supervised release. Mummey obtained urine samples from Manansingh on February 1, 2016 and March 11, 2016. The contracted laboratory for the Probation Office, Redwood Toxicology, tested these samples and found the presence of anabolic steroids before the search in this case. The Probation Office and Mummey understood that these positive tests could not determine if Manansingh had used steroids since the no steroid condition was imposed in the December 4 Judgment. On March 28, 2016, Mummey emailed the laboratory to request a clinical interpretation of the positive test results to determine if Manansingh had used or taken steroids between February 1, 2016 and March 11, 2016. Around March 29, 2016, Mummey received an email from a doctor, Dr. Victor Uralets, at Redwood Toxicology which indicated that the laboratory results for the two tests indicated that "probably steroids were **not** used by the donor between the two collections." (emphasis added). The Court finds that the Probation Office and Mummey had no evidence prior to the search that Manansingh had used or possessed anabolic steroids in violation of the conditions of supervised release.

Mummey was aware that in August of 2015 Manansingh had been arrested and detained by state law enforcement officers. The Probation Office's chronology notes about this incident appear to reflect a reference to the possibility of vials of an unknown substance being found in the car during this arrest. However, the Court finds that Officer Mummey—the only source of information about the reference to

these vials—did not know whether the vials were empty or not, did not know the appearance of the vials, did not know where they were found, and did not even know whether the term vial is an accurate description of the containers that were allegedly found by state law enforcement officers. He did know that the state officers did not believe that the vials or containers contained illegal substances and did not consider them to be suspicious. He did know that the officers did not seize the vials for purposes of testing or examination or to keep as evidence of illegal drug sales. Upon being made aware of these alleged vials, the Probation Office did not request that Manansingh turn over these so-called vials or invoke the search condition to seek to find them.

### III.   LEGAL STANDARD

A warrantless search of probationer's residence is permissible under the Fourth Amendment when it is based upon reasonable suspicion and pursuant to a condition of probation. United States v. Mayer, 560 F.3d 948 (9th Cir. 2009)(citing United States v. Knights, 534 U.S. 112, 121-22 (2001)). "Reasonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." United States v. Evans, 786 F.3d 779, 788 (9th Cir. 2015)(internal citations omitted). In this case, that means probation officers must have had a particularized suspicion of the possession of contraband or evidence of a violation of supervised release in order to justify a search. See generally, Id. (discussing standard of reasonable suspicion).

"The standard for determining whether probable cause or reasonable suspicion exists is an objective one; it does not turn either on the subjective thought processes of the officer or on whether the officer is truthful about the reason for the stop." United States v. Magallon-Lopez, 817 F.3d 671, 675 (9th Cir. 2016). Importantly, while the standard is an objective one, and not based upon officers' subjective intentions or

beliefs, the facts justifying a search or a stop must be "known to officers" at the time of the search or stop. Id. (citations omitted).

Evidence seized pursuant to an unjustified and illegal search must be suppressed. Wong Sun v. United States, 371 U. S. 471, 488 (1963).

## IV. ANALYSIS

The Court finds that the United States Probation office did not have reasonable suspicion of a violation of a condition of supervised release or contraband sufficient to legally justify the April 1, 2016 search of Mr. Manansingh's residence. While the Probation officers did not need a warrant, reasonable suspicion was required to justify the search. The government has offered several arguments to support a finding of reasonable suspicion to search. The Court rejects all of them.

First, the government argues that Officer Mummey and the Probation Office[1] had evidence that suggested that Manansingh had other concealed sources of income. However, the Court has found and finds that the Probation Office did not have any information to suggest that Manansingh had alternate sources of income. Officer Mummey confirmed that Manansingh lived at an apartment where Manansingh's fiancé was on the lease and responsible for the rent payments. Neither Nairns or Manansingh indicated that he had to pay any rent at all. Mummey did not have information to suggest that Manansingh had to make any payments for the vehicles he drove—the Mercedes and the BMW. Indeed, Mummey testified that he never received or had any information that Manansingh had other sources of income than was being reported, and the Court credits this testimony from Mummey. The Court finds that the Probation Office and Mummey had no information to suggest that Manansingh was living beyond his means. He had a job and no regular significant expenses.

---

[1] While the Court references both Probation Officer Mummey individually and the "Probation Office," the Court does not find that there were any facts known to others in the Probation Office that were not known by Officer Mummey or vice versa. The Court's separate reference to them at times is not meant to suggest separate knowledge. For the purpose of this order, their knowledge is unitary. Officer Mummey was the only witness from the Probation Office or otherwise to testify.

Second, the government suggests that Manansingh's positive tests for anabolic steroids for his February 2016 and March 2016 urine samples provided an objective basis for believing that Manansingh possessed and was using anabolic steroids in violation of the terms of his supervised release. This argument can be and must be quickly rejected. Mummey received direct correspondence from an expert at the government laboratory who conducted the tests which said that the results actually indicated that Manansingh had not used steroids between the two tests in February and March 2016. The Probation Office understood that that mere presence of anabolic steroids in Manansingh's system during these tests did not establish that he had actually used steroids after the no steroid condition had been imposed. It was for this reason that Mummey sought clarification of the meaning of the positive test results. This results confirmed that Manansingh had not been using steroids.

Third, the government offers a somewhat amorphous argument that Manansingh's alleged failure to indicate on a monthly report that he was driving either the Mercedes or the BMW suggested that he might have other information about concealed assets in his residence. As a preliminary matter, the Court does not find that Manansingh withheld or left our information in his reports about the vehicles he was driving. Manansingh completed initial reports specifically identifying the Mercedes. Moreover, he clearly provided information directly to Mummey about the vehicles he was driving, including the BMW and the Mercedes. The Court finds that the Probation Office and Officer Mummey did not suspect—based upon other articulable information—that Manansingh was driving or had access to other vehicles. To the extent there was a discrepancy between the computer-filed reports and other written reports regarding his driving of the Mercedes or the BMW, the Court finds that Probation was not aware of or focused on such a discrepancy.

Fourth, the government also appears to suggest that Manansingh's alleged possession of vials of an unknown substance at his arrest in August of 2015 provided reasonable suspicion that he might have possessed in April 2016 illegal or violative substances in his residence. This argument is untenable. The

Court finds that the Probation office did not have specific articulable information about whether the vials even existed, whether they were empty or contained a substance, the nature of any substance within the vials, whether they were even "vials" versus some other shaped container, where they were found or any other specific information about these so-called vials. The Probation Office corroborated no information about the arrest and the alleged vials. The Probation Office had no reliable information about these vials. The alleged police report itself was not presented in the hearing and Officer Mummey's recollection of the information about the vials was not specific or clear. The Probation Office did know that the state officers did not believe that the vials contained an illegal substance and did not retain them as evidence of illegal drug activity.

Importantly, while there is no evidence that steroids were in these vials, Manansingh's possession of legal steroids in August 2015 would not have been a violation of his conditions of supervised release at that time. This alleged possession could not therefore be considered to be a part of ongoing illegal activity.

Fifth, this alleged possession occurred more than seven months prior to the search of Manansingh's residence. The Probation Office did not have information that the vials themselves represented evidenced of a violation of Manansingh's supervised release and the Probation Office received and had no information to even suggest an ongoing pattern of criminal activity between the date of the arrest and the search. Thus, even if the vague and uncorroborated information about the vials provided some information that could be used to support a search, it was stale, without more information, by the time of the search of Manansingh's residence. For all of these reasons, Manansingh's alleged possession of these "vials" in August 2015 did not create articulable facts to support the existence of reasonable suspicion for the search in this case.

Finally, the Court does not find for the related time period that the government has established that Manansingh was dishonest with Mummey about information that he was required to provide for his supervision as to a specific condition. Officer's Mummey's belief that Manansingh may have a

mendacious nature, even if justified, does not itself create specific articulable facts to support a search for particular evidence of a violation of a condition of supervised release.

In conclusion, the Court finds that the Probation Office and Officer Mummey did not know of particular articulable facts which provided a basis for reasonable suspicion that Manansingh possessed contraband or had evidence of a violation of his supervised release in his residence on April 1, 2016.

### V. CONCLUSION

IT IS ORDERED that the Defendant's Motion to Suppress is GRANTED. (ECF No. 36). All evidence obtained from the April 1, 2016 search if Manansingh's residence is suppressed.

DATED this 31st day of August, 2017.

_____
RICHARD F. BOULWARE, II.
United States District Judge